**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

July 1, 2015

LETTER TO COUNSEL

      RE:    *Paul Harper Smith v. Commissioner, Social Security Administration*;
               Civil No. SAG-14-1299

Dear Counsel:

      On April 16, 2014, Plaintiff Paul Harper Smith petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 23, 24, 25). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Smith's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Mr. Smith filed his claim for Disability Insurance Benefits ("DIB") on May 31, 2005. (Tr. 57). He alleged a disability onset date of June 2, 2005. (Tr. 13, 111). His claim was denied initially and on reconsideration. (Tr. 86-87, 108-10). A hearing was held on September 7, 2007, before an Administrative Law Judge ("ALJ"). (Tr. 111). Following the hearing, the ALJ determined that Mr. Smith was not disabled within the meaning of the Social Security Act. (Tr. 108-23). The Appeals Council ("AC") granted Mr. Smith's request for review and remanded his case to the ALJ for further consideration. (Tr. 60-62). Thereafter, a second hearing was held on July 22, 2009, and the ALJ again determined that Mr. Smith was not disabled during the relevant period.[1] (Tr. 63-80). The AC granted Mr. Smith's request for review of the second hearing decision and remanded his case to the ALJ for further consideration. (Tr. 81-84). A different ALJ then held a third hearing on June 21, 2013, (Tr. 359-434), after which she also determined that Mr. Smith was not disabled. (Tr. 10-25). The AC denied Mr. Smith's request for review of the third hearing decision, (Tr. 5-8), so that decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Mr. Smith suffered from the severe impairments of degenerative disc disease of the lumbosacral spine status post L4-5 fusion in 1986 and L5-S1 fusion in 1989, left

---

[1] The relevant time period is between Mr. Smith's alleged onset date of June 2, 2005, and his date last insured, March 31, 2009. (Tr. 13).

shoulder pain, hearing loss, and tinnitus. (Tr. 15). Despite these impairments, the ALJ determined that Mr. Smith retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he is further limited as follows: with his non-dominant left upper extremity, he can occasionally reach, push and pull (the use of his dominant right upper extremity is unlimited). In addition, he can occasionally climb ramps or stairs (never ladders, ropes or scaffolds), balance, stoop, kneel, crouch and crawl; he requires hearing protection for environments involving loud noise; and he must avoid concentrated exposure to workplace hazards.

(Tr. 16). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Smith could perform his past relevant work as a museum guard, flight instructor, and technical support specialist and that, therefore, he was not disabled. (Tr. 24-25).

Mr. Smith raises two main arguments on appeal. First, Mr. Smith claims that his spinal impairment medically equals the criteria of Listing 1.04. Second, Mr. Smith contends that the ALJ committed a slew of errors in evaluating his RFC. Each argument lacks merit and is addressed below.

At step three of the sequential evaluation, the ALJ must compare a claimant's impairments with the Listing of Impairments to determine if the claimant's impairments are severe enough to warrant a presumption of disability. *Bryant v. Colvin*, 573 F. App'x 186, 188 (4th Cir. 2014); 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). For a claimant to establish that his impairment meets or equals a listing, it must "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). However, if a claimant does not exhibit one or more of the findings specified in a particular listing, his impairment is "medically equivalent" to that listing if he has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1). Listing 1.04(A), which pertains to disorders of the spine, requires a claimant to exhibit, among other criteria, a "positive straight-leg raising test." 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 1.04(A). In this case, the ALJ concluded that Mr. Smith's spinal impairment "does not meet Listing 1.04A because it is not associated with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (Tr. 16). The ALJ also specifically noted that Mr. Smith "ambulates with a normal gait and straight leg raising tests repeated yielded negative findings." *Id.*

Although Mr. Smith concedes that he does not exhibit a positive straight-leg raising test, he nevertheless contends that his impairment medically equals Listing 1.04(A) because the results of his nerve conduction tests are of "equal medical significance" to a positive straight-leg

raising test. Pl.'s Reply 1-3. Mr. Smith claims that the results of his nerve conduction tests reveal nerve root pressure, tension, or irritation, as would a positive straight-leg raising test. I need not determine whether the results of Mr. Smith's nerve conduction tests medically equal the results of a positive straight-leg raising test, because Mr. Smith has not established that he meets or equals all of the other criteria of Listing 1.04(A). In his reply, Mr. Smith states that the Commissioner "acknowledges" that he "has all of the evidence set forth in part A of Listing 1.04 except the positive straight leg raising test." Pl.'s Reply 2. Mr. Smith's statement patently misrepresents the Commissioner's position. For example, the Commissioner argues that the treatment notes "document that Mr. Smith's pain was in a 'relatively nonspecific pattern,'" which is inconsistent with Listing 1.04A's requirement of a "neuroanatomical distribution of pain." Def.'s Mem. 13. Moreover, although the ALJ specifically noted the absence of a positive straight-leg raising test, there is no indication that her determination was based solely on that criteria. (Tr. 16). Thus, even if Mr. Smith's nerve conduction test results medically equal a positive straight-leg raising test, there is substantial evidence in support of the ALJ's determination that Mr. Smith did not satisfy other requirements of Listing 1.04(A).

Next, Mr. Smith generally asserts that the ALJ did not consider all of the relevant functions in assessing his RFC. Pl.'s Mem. 22; s*ee* 20 C.F.R. § 404.945 (setting forth the physical, mental, and other demands of work activities that, if impacted, might reduce a claimant's ability to do past work and other work). Mr. Smith also argues that the ALJ erred by not relying on a medical opinion in determining his RFC, characterizing the ALJ's determination as an "improper substitution" of the ALJ's "own lay opinion for that of the treating physicians' medical evidence." Pl.'s Mem. 23. Finally, Mr. Smith contends that the ALJ erred in determining, at step four of the sequential evaluation, that he was capable of performing his past relevant work. Each contention of error relies upon Mr. Smith's claim that the opinions of his treating physicians, Dr. Rezba and Dr. Miller, were entitled to controlling weight because "absolutely no evidence contradicts" them. Pl.'s Mem. 24.

The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. § 404.1527. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). In this case, the ALJ explained that she accorded Dr. Rezba's and Dr. Miller's 2005-2006 medical opinions "limited weight" because they were: "on an issue specifically reserved under the Regulations to the Commissioner . . . not supported by examination signs and findings . . . based primarily on the claimant's subjective statements . . . [and] his treatment course consisted of medication management." (Tr. 22-23). Similarly, the ALJ assigned Dr. Rezba's and Dr.

*Paul Harper Smith v. Commissioner, Social Security Administration*
Civil No. SAG-14-1299
July 1, 2015
Page 4

Miller's 2009 medical opinions, "limited weight," because they were: "unsupported by concurrent treatment records." (Tr. 23). In support of her assignments of weight, the ALJ cited objective medical evidence that contradicted the physicians' opinions, including a neurological examination which showed "an absence of eyelid or grip myotonia" and a negative straight-leg raising test. (Tr. 22-23). Contrary to Mr. Smith's assertion, the ALJ thus identified specific objective medical evidence that contradicts the opinions of Dr. Rezba and Dr. Miller. Accordingly, I find that the ALJ provided substantial evidence in support of her evaluation of those opinions and her ultimate RFC assessment.

Finally, I note that I am unpersuaded by Mr. Smith's arguments pertaining to his hearing loss. Pl.'s Mem. 26. In particular, he claims that the hearing difficulties he experienced at the hearing before the ALJ—more than four years subsequent to the relevant time period in this case—illustrate that he cannot perform his past relevant work. *Id.* Mr. Smith has not, however, offered any evidence in support of the proposition that his hearing was impaired to a disabling extent during the relevant time period. The ALJ explained that she discounted Mr. Smith's claims regarding the severity of his hearing impairment because, despite being evaluated for a hearing aid in 2004, Mr. Smith did not actually obtain a hearing aid until 2012. (Tr. 20). Additionally, the ALJ noted that in 2004, Mr. Smith reported that he functioned "'extremely well' with his family and within his work environment." (Tr. 21) (citing (Tr. 225)). The ALJ finally noted that, after receiving his hearing aids, Mr. Smith stated that he was satisfied with them, which contradicted his testimony at the hearing that they do not work well. (Tr. 21-22). I thus find that the ALJ provided substantial evidence in support of her determination that a limitation requiring "hearing protection for environment involving loud noise," adequately accommodates his hearing impairment. (Tr. 24).

For the reasons set forth herein, Mr. Smith's Motion for Summary Judgment (ECF No. 23) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 24) is GRANTED. The Commissioner's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge